James Harold **PETERSON**; Paula **Peterson, Appellants,**

v.

**CITY OF PLYMOUTH; Michael Ridgley; David Lindman; Mark Bevins, Appellees.**

No. 94–1571.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1995.

Decided July 14, 1995.

---

Barry G. Reed, Minneapolis, MN, argued, for appellant.

Kelly A. Everhart, Circle Pines, MN, argued (Joseph B. Marshall, on the brief), for appellees.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

James Peterson and his wife Paula sued three police officers. They alleged Fourth Amendment violations and false imprisonment arising from an incident involving a snowblower. A jury found for the officers on all but one claim. After trial, the district court granted the officers' motion for judgment as a matter of law on that claim and dismissed the case. James Peterson appeals. Because Peterson is entitled to a new trial on two of his claims and judgment as a matter of law on the remaining claim, we reverse.

## I. BACKGROUND

The Petersons own a house in Plymouth, Minnesota, which they rented to Scott Kluck, David Scheummer, and another person. Af-ter allegedly damaging the house, the three tenants moved out. Kluck and the third tenant vacated the premises by August 1, 1986. Scheummer left on September 27, 1986. A week later, Peterson removed a snowblower from the garage of the rental property and stored it in a locked shed off the premises.

On October 7, 1986, Scheummer and Steven Scollard, a person not previously known to Peterson, came to the rental property while Peterson was there making repairs. Scollard claimed to own the snowblower that had been in the garage and demanded that Peterson return it. Apparently, Scollard had worked with Kluck doing snow removal and the two had stored the snowblower in the garage. When Peterson refused to return the snowblower, Scollard called the police and accused Peterson of theft.

Two Plymouth police officers, David Lindman and Mark Bevins, arrived a short time later and found Peterson, Scheummer and Scollard arguing in front of the house. Peterson refused to identify himself or answer the officers' questions. When Peterson attempted to go into the house, an officer blocked his path. The officers then escorted Peterson to a patrol car, patted him down, and locked him in the back seat, where he was held for approximately twenty minutes. Peterson was released after the officers interviewed Scollard and Scheummer and directed them to leave the area.

Officer Michael Ridgley later investigated the theft charges against Peterson. Officer Ridgley obtained written statements from Scollard and Kluck and spoke to Scheummer by phone. Scollard also provided Officer Ridgley with a tape recording of Scollard's October 7 conversations with Peterson and the police. Officer Ridgley attempted to contact Peterson, but was unsuccessful. On October 29, 1986, Officer Ridgley obtained a warrant to search the Petersons' home in Medina, Minnesota. While searching for the snowblower and documents relating to Kluck's tenancy, Officer Ridgley entered a room where Paula Peterson was bathing. Neither the snowblower nor any documents were found in the Petersons' home.

On October 30, 1986, Officer Ridgley signed a sworn complaint charging Peterson with felony theft. An arrest warrant was executed the next day. Peterson agreed to report to the Hennepin County Adult Detention Center where he was booked and briefly detained. The charges against him were later dismissed.

Based on these events, the Petersons filed suit against the three police officers, the City of Plymouth, Scollard, and Kluck. The suit alleged liability under 42 U.S.C. § 1983 for violations of the Petersons' Third, Fourth, Fifth, and Fourteenth Amendment rights as well as various state law causes of action. The district court granted summary judgment in favor of the defendants based on qualified immunity and other grounds. On appeal, we reversed, holding that the officers were not entitled to summary judgment on the basis of qualified immunity. *Peterson v. City of Plymouth*, 945 F.2d 1416, 1419–21 (8th Cir.1991) (hereinafter *Peterson I*).[1]

On remand, the Petersons pursued only the Fourth Amendment and state law false imprisonment claims against the officers. In these claims, the Petersons alleged that: 1) Officers Lindman and Bevins violated James Peterson's Fourth Amendment rights and falsely imprisoned him by placing him in the patrol car; 2) Officer Ridgley violated the Petersons' Fourth Amendment rights by searching their home; and 3) Officer Ridgley violated James Peterson's Fourth Amendment rights and falsely imprisoned him by causing him to be arrested. After a four-day trial, a jury determined by special verdict that: 1) Officer Ridgley *did not* violate Paula Peterson's Fourth Amendment rights; 2) Officers Lindman and Bevins *did not* violate

James Peterson's Fourth Amendment rights; 3) Officers Lindman and Bevins *did not* falsely imprison James Peterson; 4) Officer Ridgley *did not* violate James Peterson's Fourth Amendment rights; and 5) Officer Ridgley *did* falsely imprison James Peterson. The jury awarded $5,000 to James Peterson and, though it found that her rights had not been violated, awarded $1,500 to Paula Peterson.

Both the officers and the Petersons filed post-trial motions challenging the verdict. The Petersons argued that they were entitled to judgment as a matter of law on their claims based on the "law of the case" as established in *Peterson I*. In the alternative, the Petersons sought a new trial because of inconsistency in the jury verdict. The officers sought judgment as a matter of law on the false imprisonment claim against Officer Ridgley.

The district court rejected the Petersons' arguments and granted the officers' motion. In the court's view, the jury's finding in favor of Officer Ridgley on James Peterson's Fourth Amendment claim foreclosed any claim for false imprisonment. The court also determined that the verdict was not inconsistent.[2]

## II. DISCUSSION

This appeal involves only James Peterson's claims against Officers Bevins, Lindman, and Ridgley for unlawful arrest under the Fourth Amendment.[3] Peterson contends that he is entitled to judgment as a matter of law or at least a new trial on each of these claims.

■ As an initial matter, Peterson argues that there should not even have been a trial

---

1. We affirmed summary judgment in favor of the defendants on the Petersons' claim for intentional infliction of emotional distress and affirmed the dismissal of the Petersons' section 1983 claim against the City of Plymouth. *Peterson I*, 945 F.2d at 1421 & n. 7.

2. The district court entered judgment in favor of the officers on all of the Petersons' claims. After the court granted judgment as a matter of law in favor of Officer Ridgley, there was no finding of liability to support either the $5,000 damage award to James Peterson or the $1,500 award to Paula Peterson.

3. The Petersons' Fourth Amendment claim relating to the search of their home and James Peterson's state law false imprisonment claims against Officers Bevins and Lindman are not properly before us. In their opening brief, the Petersons do not address the allegedly unlawful search of their home or James Peterson's state law claims against Officers Bevins and Lindman. They have thus abandoned these claims and we do not consider them. Based on our disposition of this appeal, we need not consider Peterson's state law false imprisonment claim against Officer Ridgley. *See infra* note 12.

on the issue of liability because our findings in *Peterson I* are the law of the case and require a judgment in his favor. We disagree. In *Peterson I*, we examined both Peterson's initial detention by Officers Lindman and Bevins and the subsequent conduct of Officer Ridgley in obtaining a warrant for Peterson's arrest. Viewing the evidence in the light most favorable to Peterson, we determined that, in each instance, no reasonable officer could have believed that Peterson had not been arrested or that there was probable cause [4] to support an arrest. 945 F.2d at 1419–21. Thus, we held that the officers were not entitled to summary judgment on qualified immunity grounds. *Id.*

These legal conclusions were made in the context of a summary judgment motion and did not foreclose further litigation of Peterson's claims or the officers' qualified immunity defense. *See Stoner v. State Farm Mutual Auto. Ins. Co.*, 856 F.2d 1195, 1197 (8th Cir.1988). The officers offered evidence at trial disputing the version of events upon which our holdings in *Peterson I* were based. Under such circumstances, the law of the case doctrine is not strictly applicable.

Our discussion of Peterson's remaining arguments necessarily begins with an examination of the issues actually disputed at trial. To prevail under section 1983, Peterson must show that the officers, while acting under color of state law, arrested him (or caused him to be arrested) without probable cause. The parties do not dispute that the officers were acting under color of state law. Likewise, whether Peterson's detention in the back of the patrol car and the later Detention Center arrest were "arrests" under the Fourth Amendment was not disputed at trial.[5] Thus, we need only examine whether the two arrests were supported by probable cause.

■ Analysis of the probable cause issue involves two steps. The first inquiry is whether the officers actually had probable cause to arrest Peterson. The officers had probable cause if, at the moment the arrest was made, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [Peterson] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). If the officers had probable cause, the arrests did not violate the Fourth Amendment and the officers are not liable.

■ If the officers did not have probable cause, a second inquiry is necessary to determine whether the officers are nonetheless entitled to qualified immunity.[6] The officers

4. For purposes of summary judgment only, Officers Bevins and Lindman did not argue that they had probable cause to arrest Peterson. *Peterson I*, Opening Brief at 9.

5. On remand after *Peterson I*, the Petersons moved for summary judgment on the basis that *Peterson I* was the law of the case. The district court found that probable cause remained an issue for trial and denied the motion. Appellants' App. at 74. The district court also found that *Peterson I* conclusively determined that the initial detention in the patrol car was an arrest and that none of the officers were entitled to qualified immunity. *Id.* at 73. Though we disagree that our holdings on immunity and arrest were conclusive, the case was tried to the jury with these issues foreclosed and the officers did not object. The jury received no instructions on arrest. Indeed, the instructions assumed that an arrest had occurred. The jury was told, "You are instructed that Officers Lindman and Bevins were acting under the color of state law *when they arrested Mr. Peterson.*" Trial Transcript, vol. IV at 249 (emphasis added). In the final analysis, this was a correct instruction. The undisput-

ed facts adduced at trial establish that Peterson's detention in the patrol car was an arrest. *See infra* note 8.

6. The district court ruled that our decision in *Peterson I* was binding on the issue of qualified immunity. *See supra* note 5. Despite this ruling, the jury instructions incorporated the officers' qualified immunity defense. The jury was instructed, "You must determine whether Officers Lindman, Bevins and Ridgley reasonably believed that they had probable cause to arrest or cause the arrest of Mr. Peterson." Trial Transcript, vol. IV at 250. Thus, qualified immunity was arguably an issue at trial and we will consider it. We note, however, that it was improper for the court to give the qualified immunity question to the jury in the first place. Though it is the province of the jury to determine disputed predicate facts, the question of qualified immunity is one of law for the court. *See Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991); *Arnott v. Mataya*, 995 F.2d 121, 123 (8th Cir.1993). *See generally* Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation* § 8.08 (1991 & Supp.1994).

are immune from liability if, in light of clearly established law and the information known to the officers, a reasonable officer could have believed the arrests were supported by probable cause. *Hunter v. Bryant*, 502 U.S. 224, 227–28, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991); *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987). With this framework in mind, we now turn to Peterson's remaining arguments regarding the two arrests.

### A. Initial Arrest: Officers Lindman and Bevins

Peterson contends that, based on the undisputed facts in this case, his motion for judgment as a matter of law should have been granted. We review the district court's denial of the motion de novo, considering the evidence in the light most favorable to the officers. *See McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1400 (8th Cir.1994).

At trial, Officers Lindman and Bevins related their version of the events leading up to the arrest of Peterson in the patrol car. The incident began when the officers were dispatched to the Petersons' rental property to deal with a property dispute involving a snowblower. Upon their arrival, they observed three men in front of the house engaged in a loud, heated argument. At that time, the officers did not know any of the parties and did not know who owned the property.

When the officers approached, Scollard identified himself and told Officer Lindman, in a roundabout way, that Peterson had admitted to stealing Scollard's snowblower.[7] Meanwhile, Officer Bevins approached Peterson. Peterson refused to identify himself and stated that the police had no right to be on the premises. Peterson then turned and walked past Officer Bevins toward the house. When Officer Bevins followed and asked him to stop and explain the situation, Peterson turned and stated, "I've got a problem, and the problem is the Plymouth police are here." Peterson then headed back toward the house. Officer Bevins blocked Peterson's path and called for assistance from Officer Lindman. After Officer Lindman joined Officer Bevins, Peterson continued his attempts to enter the house. Officer Lindman then took Peterson by the arm, walked him to a patrol car, patted him down, and placed him in the back seat. During this time, Peterson was verbally abusive but physically compliant.

Based on the above, at the moment Peterson was arrested, it is possible that the officers knew only that Scollard was accusing a man (later identified as Peterson) of stealing a snowblower and that this man was uncooperative and had refused to identify himself. The officers claim not to have known whether or not Peterson had some possessory interest in the house, despite the fact that an inference of such an interest is almost inescapable under the circumstances. Though it is a very close question, we cannot find on these facts that the officers lacked probable cause to arrest Peterson or that their qualified immunity defense should fail. Viewed in the light most favorable to the officers, Scollard's statement informed the officers that Peterson had admitted taking property of significant value without a claim of right. Since officers are generally entitled to rely on the veracity of information supplied by

---

7. Scollard tape-recorded his conversations with Peterson and with the police. According to a transcription of the tape, Scollard told the police the following when they arrived at the scene:

> Officer, I have a statement on tape right now, it states if this gentleman clears his debts up, ... my portable phone. I talked with the officer today and in regard to the investigator, and he told me to come and talk to this Mr. Jim Peterson gentleman. I own a snowblower worth approximately 900 some odd dollars. I had it in this garage because my old shoveling partner worked with me on it, we left it in this garage. This particular gentleman seems to have a problem with, ah some ... complaining about his lawn and he had bills and what have

you, I had nothing to do with that. He confiscated my snowblower, basically took it for ransom. What have you. This is on tape by the way, okay?

Appellants' App. at 85 (ellipses in original). A moment later, Scollard continued:

> So you know that. He just admitted that he took it, and I said if I offered you $200 to fix your lawn, paid your bill, and someone that owed him $105, would you give me my snowblower back, he said yeah. I have that on tape. He has taken my snowblower, which I own and which I find to be felony charges, this is ... the statute.

*Id.* (ellipses in original).

the victim of a crime, *see Clay v. Conlee*, 815 F.2d 1164, 1168 (8th Cir.1987), Officers Bevins and Lindman could have reasonably believed that Peterson had committed an arrestable offense. Peterson is not entitled to judgment as a matter of law.

■ In the alternative, Peterson contends he is entitled to a new trial on his claims against Officers Bevins and Lindman because the district court should have excluded the testimony of Glen Murphy, a self-described "police practices and procedures expert." We review the district court's decision to allow the testimony for abuse of discretion. *See Hogan v. American Tel. & Tel. Co.*, 812 F.2d 409, 410 (8th Cir.1987) (per curiam). Even with a clear showing of abuse, we will reverse only if the error had a "substantial influence" on the jury's verdict. *McKnight*, 36 F.3d at 1405. Applying this standard, we conclude that the jury verdicts in favor of Officers Bevins and Lindman cannot stand.

■ Murphy's testimony was offered to show that Officers Lindman and Bevins had acted reasonably in their encounter with Peterson. Over the course of his testimony, Murphy set forth his opinion as to why each action the officers took was consistent with "nationally accepted standards." His overall opinion was that the officers' conduct comported with the "standards under the Fourth Amendment."

■ Expert opinion testimony is admissible only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. As discussed above, the only disputed issues at trial involved whether the officers actually had probable cause and whether, under qualified immunity analysis, they could reasonably believe they had probable cause. Both probable cause and qualified immunity are ultimately questions of law. *See Estes v. Moore*, 993 F.2d 161, 163 (8th Cir.1993) (per curiam) (probable cause); *Engle v. Townsley*, 49 F.3d 1321, 1323 (8th Cir.1995) (qualified immunity). The jury's role is limited to settling disputes as to predicate facts. *See Arnott v.*

*Mataya*, 995 F.2d 121, 123–24 (8th Cir.1993). In this case, that means the jury was entitled to determine what facts were known to the officers at the time of the arrest. None of Murphy's testimony assisted the jury in this regard. Murphy's testimony involved only his views concerning the reasonableness of the officers' conduct in light of "Fourth Amendment standards." To that end, his testimony was not a fact-based opinion, but a statement of legal conclusion. *See Estes*, 993 F.2d at 163. The legal conclusions were for the court to make. It was an abuse of discretion to allow the testimony.

Not every error of this type requires reversal, however. Unless the error had a "substantial influence" on the jury's verdict, the error is harmless. *McKnight*, 36 F.3d at 1405. Here, we find that the improper expert testimony substantially influenced the jury's verdict. Murphy's testimony led the jury to focus on the wrong question. Rather than focusing on the facts known to the officers at the time of the arrest, Murphy told the jury that the officers' overall conduct was reasonable and not violative of the Fourth Amendment. The trial judge's comments to the jury during Murphy's testimony reaffirmed the focus on the overall reasonableness of the officers' actions. And, the verdict form used by the court improperly asked the jury to answer this question of law. Thus, we remand this case to the district court for a new trial on Peterson's Fourth Amendment claims against Officers Bevins and Lindman.

■ The scope of the second trial is to be limited to determining: 1) whether Officers Bevins and Lindman had probable cause to arrest Peterson; and 2) if they did not have probable cause, whether they are entitled to qualified immunity because a reasonable officer could have believed the arrest was supported by probable cause. In this regard, the jury should be focused on the factual dispute between the parties concerning what the officers knew at the moment they arrested Peterson.[8]

---

8. On retrial, the question of whether Peterson's detention in the patrol car was an arrest will be foreclosed. The arrest issue was neither disputed at trial nor raised on appeal. In addition, based on the facts adduced at trial, viewed in the light most favorable to the officers, we now hold

The facts actually in dispute are limited. Peterson largely agrees with the officers' version of events. He admits that he refused to identify himself or otherwise cooperate with the officers.[9] What is disputed, however, is: 1) whether the officers knew that Peterson was the owner of the house; 2) whether Peterson told the officers that his disagreement with Scollard was a civil dispute; and 3) whether Scollard's initial statement put the officers on notice that the dispute was civil in nature.

■ These factual disputes are key.[10] If the jury determines that the officers knew that Peterson owned the house and that the dispute was civil in nature, it would not have been reasonable for them to have believed that a theft had been committed. Indeed, Scollard's initial statement to the officers, *see supra* note 7, can be read to support the conclusion that the dispute was civil in nature from the beginning with Scollard attempting to use the police to influence the outcome of this private disagreement.

As stated, the role of the jury in the new trial should be limited to determining what the officers knew at the time of the arrest. In light of the jury's findings, the court should then determine the legal questions of probable cause and qualified immunity.

### B. Detention Center Arrest: Officer Ridgley

■ Peterson also contends that his motion for judgment as a matter of law on his Fourth Amendment claim against Officer Ridgley should have been granted on the

basis of the undisputed facts. Again, we review the district court's denial of the motion de novo, considering the evidence in the light most favorable to Officer Ridgley. *See McKnight,* 36 F.3d at 1400.

Officer Ridgley caused Peterson to be arrested by swearing out a complaint charging him with felony theft. It is undisputed that when he signed the complaint, Officer Ridgley had before him the reports of Officers Lindman and Bevins, written statements from Kluck and Scollard, and a copy of Scollard's tape recording of the events which occurred at the rental property on October 7, 1986. Officer Ridgley also had talked to Scheummer by phone. According to Officer Ridgley, Peterson had failed to return Ridgley's phone calls or otherwise contact Ridgley.

Based on the information available to Officer Ridgley, we find that Peterson is entitled to judgment as a matter of law. As we noted in *Peterson I,* the problem with Officer Ridgley's conduct is that he caused Peterson's arrest with the knowledge that Peterson lacked criminal intent. Officer Ridgley accused Peterson of felony theft, which requires that property be taken "intentionally and without claim of right." Minn.Stat. § 609.52, subd. 2(1). Criminal intent is lacking where the property is taken "with the reasonable and actual belief that it was abandoned." *State v. Gage,* 272 Minn. 106, 136 N.W.2d 662, 665 (1965). It was clear from the information known to Officer Ridgley that Peterson took the snowblower under the

---

as a matter of law that Peterson's detention in the back of the patrol car was an arrest and that a prudent police officer in the same circumstances could not have reasonably believed otherwise. *See Florida v. Royer,* 460 U.S. 491, 502–03, 103 S.Ct. 1319, 1326–27, 75 L.Ed.2d 229 (1983) (plurality opinion); *United States v. Thompson,* 906 F.2d 1292, 1296–97 (8th Cir.), *cert. denied,* 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990).

9. We cannot help but wonder whether Peterson could have avoided the entire ordeal and this protracted litigation by simply cooperating with the officers and explaining the situation.

10. The focus of probable cause is an objective analysis of the facts known to the officers. In the first trial, Peterson relied heavily on a statement

made by one of the officers *after* Peterson had been arrested. While questioning Scollard, the officer stated, "Okay, now what we are trying to figure out is between civil and criminal. Alright?" Appellants' App. at 88. Because probable cause depends on an objective evaluation of the established facts, the officer's subjective opinion is not relevant to the court's determination of whether there was probable cause for arrest. *See Warren v. City of Lincoln,* 864 F.2d 1436, 1439 (8th Cir.) (en banc), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989). The officer's statement *is* relevant however, to the extent it impeaches the credibility of the officers' testimony concerning what they knew at the time of the arrest.

actual and reasonable belief that it had been abandoned.

On Scollard's tape recording, Peterson clearly claims that the snowblower was abandoned. A Minnesota statute, with which Officer Ridgley admits he was familiar, allows a landlord to hold certain property after a tenant moves out of rented premises.[11] Kluck's written statement indicates that Kluck had been both Peterson's tenant and a part-owner of the snowblower. Kluck also indicated that Scheummer agreed to "keep" the snowblower while Scheummer was a tenant. By the time Peterson removed the snowblower, both Kluck and Scheummer had moved out of the rental property. Thus, it was reasonable for Peterson to hold the snowblower as property abandoned by one of his tenants.

Knowledge of Peterson's reasonable and actual claim of right put Officer Ridgley on notice that the dispute was a civil matter not involving criminal intent. Despite this, Officer Ridgley swore out a complaint seeking Peterson's arrest. The complaint failed to mention that Peterson had claimed the snowblower as abandoned property. Under these circumstances, we find that the arrest resulting from Officer Ridgley's complaint was not supported by probable cause.

 For the same reasons, we find that Officer Ridgley is not entitled to qualified immunity. "It is clearly established that the Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause before an arrest warrant can issue."

*Moody v. St. Charles County,* 23 F.3d 1410, 1412 (8th Cir.1994). In light of this clearly established law, Officer Ridgley did not act in an objectively reasonable manner. A reasonably well-trained officer in Officer Ridgley's position would have known that the complaint failed to establish probable cause. *See Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). The facts demonstrate that the dispute over the snowblower was one properly resolved in the civil, not criminal, courts. Officer Ridgley is liable for causing Peterson to be arrested without probable cause.[12]

## III. CONCLUSION

Because the jury verdicts in the first trial were tainted by improper expert testimony, Peterson is entitled to a new trial on his Fourth Amendment claims against Officers Lindman and Bevins. As set forth above, the scope of the new trial shall be limited to determining whether the officers had probable cause and, if they did not, whether, for purposes of qualified immunity, a reasonable officer could have believed the arrest was supported by probable cause. We reverse and remand these claims to the district court for further proceedings consistent with this opinion.

Peterson is entitled to judgment as a matter of law on his claim against Officer Ridgley for an unlawful arrest under the Fourth Amendment. We reverse and remand this

11. Minn.Stat. § 504.24 provides in relevant part:
 Subdivision 1. If a tenant abandons rented premises the landlord may take possession of the tenant's personal property remaining on the premises, and shall store and care for the property. The landlord has a claim against the tenant for reasonable costs and expenses incurred in removing the tenant's property and in storing and caring for the property. The landlord may sell or otherwise dispose of the property 60 days after the landlord receives actual notice of the abandonment or 60 days after it reasonably appears to the landlord that the tenant has abandoned the premises.... Subdivision 2. If a landlord ... in possession of a tenant's personal property, fails to allow the tenant to retake possession of the property within 24 hours after written demand by the tenant or the tenant's duly authorized representative or within 48 hours ... after written demand ... when the landlord ... has

removed and stored the personal property in accordance with subdivision 1 in a location other than the premises, the tenant shall recover from the landlord punitive damages not to exceed $300 in addition to actual damages and reasonable attorney's fees.

12. Peterson also argues that the district court improperly "harmonized" the jury verdict in favor of Ridgley on the Fourth Amendment claim with the verdict against Ridgley on the state law false imprisonment claim. In light of the above, we need not consider this argument or whether Peterson is entitled to judgment as a matter of law on the state law claim. A finding of liability on the state law claim would add nothing to Peterson's recovery. As a result of the Fourth Amendment violation, Peterson is already entitled to full compensation for damages arising from the arrest caused by Officer Ridgley.

claim to the district court with directions to enter judgment in favor of Peterson. The district court shall conduct a new trial on this claim for the limited purpose of determining the amount of damages due to Peterson.