**Commonwealth** of the
Northern Mariana Islands,
Plaintiff/Appellee,
v.
Wang Hong **Yan**,
Defendant/Appellant.
Appeal No. 95-005
Criminal Case No. 94-0135
March 6, 1996

Argued and Submitted February 27, 1996

Counsel for appellant: Daniel J. DeRienzo, Public Defender, Saipan.

Counsel for appellee: Yvonne O. Lee, Assistant Attorney General, Saipan.

BEFORE: VILLAGOMEZ and ATALIG, Justices, and SALAS, Special Judge.

ATALIG, Justice:

■ The defendant, Wang Hong Yan ("Wang"), appeals from a January 31, 1995, "Judgment and Probation/Commitment Order" under which she was found guilty of theft, in violation of 6 CMC § 1601(a). This Court has jurisdiction pursuant to 1 CMC § 3102(a). We hold that the trial court erred in admitting the testimony of Officer James Deleon Guerrero ("Guerrero"), and that the evidence is insufficient to support a conviction for theft. Accordingly, we reverse the conviction.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

■ The dispositive issues raised on appeal are:[1]

---

[1] Wang also raises the following issues: (1) "[w]hether the trial court's failure to dismiss or suppress evidence based upon the government's failure to preserve evidence constituted a denial of due process"; (2) "[w]hether the court erred by allowing the government to amend the information after the government had rested"; (3) whether the court "erred by failing to dismiss or suppress evidence based upon the unconstitutionality of 6 CMC § 6103"; (4) whether the court erred by denying the alternative motions to either "dismiss or suppress evidence for lack of probable cause to arrest"; and (5) whether the court impermissibly shifted the burden of proof to Wang. Appellant's Brief at 1-2. Here, the issue of the preservation of the evidence bears not upon the ability of the government to bring the action but rather the strength of the evidence. Cf. Commonwealth of the N. Mariana Islands v. Mendiola, 976 F.2d 475, 487 (9th Cir. 1993). We summarily dismiss the second issue, see infra note 15, and, in light of our decision, need not reach the third and fifth constitutional issues listed above. See Wabol v. Villacrusis, 4 N.M.I. 314, 319 (1995) (Court will not "unnecessarily resolve constitutional issues"). The fourth, alternative issues are not pertinent to this appeal. An "illegal arrest or detention does not void a subsequent conviction," Gerstein v. Pugh, 420 U.S. 103, 119, 95 S. Ct. 854, 865, 43 L. Ed. 2d 54, 68 (1975), unless the conviction rests solely on evidence seized as a result of an unlawful arrest. See, e.g., Henry v. United States, 361 U.S. 98, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959). This is because the issue of probable cause to arrest, alone, does not bear upon whether or not an arrestee is to be charged with an offense. Gerstein, 420 U.S. at 125 n.26, 95 S. Ct. at 869 n.26, 43 L. Ed. 2d at 72 n.26. Instead, it deals with issues such as the constitutionality of the admission of evidence seized subsequent to the arrest, see Henry, 361

1. Whether the court erred, in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1996), in admitting Guerrero's testimony into evidence.
2. Whether sufficient evidence supports Wang's conviction for theft.

We review each of these issues de novo. *See Commonwealth v. Ramangmau*, 4 N.M.I. 227, 235, 237 (1995).[2]

In conducting our de novo review of the sufficiency of the evidence, we view the evidence in a "light most favorable to the government" to determine if "any rational trier of fact could have found the essential elements of the crime in question beyond a reasonable doubt." *Id.*, 4 N.M.I. at 237.

## FACTS AND PROCEDURAL BACKGROUND

On October 10, 1994, Wang was swimming in the Saipan Diamond Hotel Co., Ltd. ("Diamond"), hotel pool. While she was swimming, a security guard, John Atalig ("John"), approached and told her to get out of the pool. Wang continued to swim for a while and left the pool after John told her to get out several times. She then went over to a yellow towel and began to dry herself off. After drying herself, Wang dressed in clothes which she had left poolside. At approximately this point, Wang and John were joined by another security guard, Manuel Cisnero ("Manuel").

Diamond leases beach towels from Tropical Laundry ("Tropical").[3] The towel with which Wang dried herself had a tag with lettering bearing the name "Tropical Laundry" sewn on its edge.

John pointed to the towel and asked Wang to give it to him several times. Each time, she responded in English "no, mine." John asked the Diamond sports recreation employee on duty at the time, Bobby McFee ("McFee"), if the towel belonged to Diamond. McFee stated that it did.[4]

When she refused to give him the towel, John asked Manuel to watch Wang and left to call the Department of Public Safety ("DPS") for assistance. Wang left the hotel and began to walk north toward Beach Road. Manuel went to the front lobby and radioed to John that Wang had left the pool area. John and Wang, followed by another guard, Antipas Paling, approached and met each other near the road.

John and Wang spoke to each other and remained roadside for approximately two to three minutes before they were joined by Officer Sylvan Rangamar ("Rangamar"). Rangamar arrested Wang and took the towel from her. He gave the towel to John, who in turn gave it to Reynaldo Hernandez ("Hernandez"), the hotel front desk clerk. Hernandez placed the towel in a box designated for used towels.

Wang was taken to the Susupe DPS Station and seated in a room at a desk with Rangamar. After some time, Guerrero entered the room. He testified that as he entered the room, he overheard Wang say "I don't want you, you no good policeman." Guerrero testified also that, in response, Rangamar said "to like keep still and cooperate." Wang then said "I did not steal only borrow."[5]

The Commonwealth of the Northern Mariana Islands ("CNMI") charged Wang by information, under 6 CMC § 1601(a), for the theft of a towel owned by Diamond. Several pre-trial motions were made by the defense, including motions to dismiss for failure to preserve the disputed towel as evidence, to dismiss for lack of probable cause to arrest, and to suppress all evidence incidental to the arrest, including Guerrero's testimony.[6] These motions were all denied.

A bench trial was conducted on January 24, 1995. At trial, Wang objected to the admission of Guerrero's testimony regarding her statements, contending that it was violative of *Miranda*.[7] The court denied the motion, finding that Wang "was not being interrogated." The

U.S. at 103, 80 S. Ct. at 171, 4 L. Ed. 2d at 139, or whether the arrestee should be released from custody, see *Gerstein*, 420 U.S. at 111-12, 95 S. Ct. at 861-62, 43 L. Ed. 2d at 63-64. Here, no evidence was seized incidental to Wang's arrest and she was not subject to continued detention.

[2] Absent the *Miranda* objection, we would review the admission of the testimony into evidence for an abuse of the trial court's discretion. *See Commonwealth v. Brel*, 4 N.M.I. 200, 202 (1995).

[3] *See, e.g.*, Transcript of Proceedings at 247-48 (testimony of Rosalia Cacdac).

[4] *Id.* at 199 (testimony of John Atalig).

[5] *Id.* at 239-40 (testimony of James Deleon Guerrero).

[6] *See, e.g., id.* at 22-23, 59-61.

[7] *Id.* at 233-34.

court based this determination on a finding that Guerrero entered the room for detention and not interrogation purposes.[8]

After the close of the CNMI's case-in-chief, over Wang's objection the information was amended to reflect the owner of the towel as Tropical and not Diamond. At the conclusion of the trial, the court found Wang guilty of the charge, stating from the bench:

> I'm convinced there was a taking and carrying away . . . of a towel and I'm convinced that the value of the towel is less than two hundred and fifty dollars, but did she take it with the intent to permanently deprive the owner of it's right to the property and what did she say. . . . . I say its not her towel because the testimony was that her personal belongings were not together with the towel but they were separated. That the towel in fact, itself was on a separate table. A towel that had been testified to that it looked like any other towel that the hotel had rented from Tropical Laundry. So I find . . . there was no testimony that on this particular date that she had a yellow towel in her possession, other than by the Government witnesses. And when she was at the police station . . . a defense of do not steal, only borrow, the best defense is a good offense or shift the burden of proving the case to that she borrowed it. Borrowed it from whom? Even the statement that I only borrowed it is [too] light. The time she permanently deprived the owner of it's right to the property is when she vacated the Diamond Hotel and was stopped the officer the towel before Beach Road.

Transcript of Proceedings at 284-86.

Wang was sentenced to five days in jail, all of which were suspended, except the thirty-nine hours during which she had already been incarcerated. She was also placed on probation for one year and ordered to perform forty hours of community service and stay away from all hotels on Saipan. *Commonwealth v. Wang*, Crim. No. 94-0135 (N.M.I. Super. Ct. Jan. 31, 1995) (order). Wang timely appealed.

## ANALYSIS

Wang argues that Guerrero's testimony was without foundation with respect to the issue of whether she was being interrogated for purposes of *Miranda*. As such, she contends that the trial court erred, under *Miranda*, in admitting Guerrero's testimony. We agree.

Further, Wang contends that the evidence is insufficient to support her conviction for theft. Viewing the evidence in a light most favorable to the CNMI, we conclude that it is insufficient to show that a reasonable fact finder could determine, beyond a reasonable doubt, that Wang committed theft of a towel owned by Tropical.

### I. Admission of Guerrero's Testimony

The trial court found that Guerrero did not enter the room for the purpose of interrogating Wang. Based on this finding, it concluded that *Miranda* was inapplicable to this matter and that Guerrero's testimony, going to the statements of Wang and Rangamar, was admissible.[9] We conclude that Guerrero was incompetent to testify as to whether or not Wang was being interrogated by Rangamar, and, as a result, the admission of his testimony violated the prophylactic safeguards of *Miranda*, intended to protect a criminal defendant's Fifth Amendment rights. *See Commonwealth v. Cabrera*, 4 N.M.I. 240, 244 (1995).[10]

█ *Miranda* warnings are required when a suspect is both in custody and subject to interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S. Ct. 1682,

---

[8] In ruling on the motion to suppress Guerrero's testimony, the court stated:

> I have nothing to indicate she was being interrogated. I'm satisfied. If you can show she's being interrogated, then you can strike it. . . . Through this witness [Guerrero] the Government has indicated that she was not being interrogated. This witness said he was patrol and this witness was for detention and he went there for detention purposes. He wasn't interrogating so, he can testify.

*Id.* at 238.

[9] *Id.* There appears to be no dispute in this matter that Yan was in custody. The dispute centers, rather, around whether or not she was being interrogated at the time she uttered the statement overheard by Guerrero.

[10] To rule otherwise would mean, for example, that any incriminating statement of a suspect in custody made while under interrogation would be admissible, so long as the person testifying in court is not the interrogating officer and unaware of the circumstances surrounding the utterance.

1689, 64 L. Ed. 2d 297, 307 (1980).[11] Where *Miranda* safeguards apply, the prosecution may not introduce evidence procured without the protection afforded by both proper warnings and a valid waiver of those warnings. *Cabrera*, 4 N.M.I. at 253 (Atalig, J., dissenting) (quoting *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612, 16 L. Ed. 2d at 706-07).

■ "'[I]nterrogation' . . . refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301, 100 S. Ct. at 1689-90, 64 L. Ed. 2d at 308 (footnotes omitted). Absent express questioning, the court must objectively examine the knowledge of the police or any circumstances of which they were aware to determine whether they were either speaking or acting in a way "that they *should have known*" would extract such a response. *Id.*, 446 U.S. at 302, 100 S. Ct. at 1690, 64 L. Ed. 2d at 308. This includes whether the "police knew that the respondent was unusually disoriented or upset at the time of [the] arrest." *Id.*, 446 U.S. at 303, 100 S. Ct. at 1690, 64 L. Ed. 2d at 309; *see also id.*, 446 U.S. at 302 n.8, 100 S. Ct. at 1690 n.8, 64 L. Ed. 2d at 308 n.8 and accompanying text.[12]

Hence, the court had to examine the circumstances objectively to determine whether either Wang was subject to express questioning by Rangamar or if Rangamar had been speaking to her or acting in such a way, or was aware of circumstances, that he should have known would lead her to utter an incriminating response. Instead, the circumstances at which the trial court looked to determine whether Wang was being interrogated were all gleaned from Guerrero's testimony.

■ For testimony to be admitted into evidence, a foundation must first be laid for the competency of the witness testifying in court. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Com. R. Evid. 602.

■ Guerrero testified that he had no personal knowledge about the circumstances surrounding, or giving rise to, the statements made by Wang and Rangamar. *See* Transcript of Proceedings at 232-45.[13] Therefore, he was incompetent to testify about the pertinent circumstances going to whether or not Wang was being interrogated by Rangamar.[14] From the record, it appears that the only CNMI witness who would have been competent to so testify was Rangamar, who was not called to testify at trial.

## II. Sufficiency of the Evidence

Under our criminal code, "[a] person commits the offense of theft if he or she unlawfully takes, uses or consumes the property or services of another with intent to permanently deprive the owner of his or her rights to the property or services." 6 CMC § 1601(a). The "'[p]roperty of another' means any property in which any person other than the defendant has a possessory or propriety interest." 6 CMC § 103(i).[15]

Thus, the CNMI bore the burden, beyond a reasonable doubt, of showing that: (1) Tropical had an interest in the towel; (2) Wang took, used or consumed the towel; and (3) Wang intended to permanently deprive Tropical of its interest in the towel. Here, there is no dispute that Wang was using the towel; rather, the

---

[13] Q: Could you see whether [Rangamar] had been talking to her prior to your going in the room?
A: No your Honor.

. . . .

Q: Okay and is that the first time that you'd seen the defendant when you walked into the room?
A: Yes your honor.

Transcript of Proceedings at 235-36 (voir dire of Guerrero by court).

[14] Furthermore, evidence is relevant only where it has "any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." Com. R. Evid. 401. Irrelevant evidence is inadmissible. Com. R. Evid. 402. As noted, the focus of the inquiry should be on whether Rangamar was subjecting Wang to either express questioning or its functional equivalent. Guerrero's testimony is irrelevant for purposes of this inquiry.

[15] In light of this definition, we see no fatal error in Diamond having initially been named as property owner in the information.

---

[11] Cf. *Commonwealth v. Ramangmau*, 4 N.M.I. 227, 235 n.26 (1995) (statement derived from non-custodial interrogation admissible).

[12] Otherwise, in the absence of express questioning, the court "focuses primarily upon the perceptions of the suspect, rather than the intent of the police," to determine if an arrestee "was subjected to the 'functional equivalent' of questioning." *Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S. Ct. 1682, 1690, 64 L. Ed. 2d 297, 309 (1980).

dispute revolves around the issues of ownership and criminal intent.

The evidentiary bases of the court's conclusion of ownership[16] in Tropical appear to have been John's testimony that the towel and clothes were placed on separate tables pool side, see Transcript of Proceedings at 201,[17] and that the towel "looked like any other towel that the hotel had rented from Tropical." It based its finding of criminal intent on a finding that Wang had vacated the hotel premises.[18] See facts and procedural background, *supra*. The CNMI contends that the testimony of the guards and Tropical employees was sufficient to show ownership of the towel in Tropical, and that the requisite criminal intent was indicated both by Wang having been arrested off the hotel premises and her having been "uncooperative."[19]

■ For the following reasons, we conclude that the evidence, viewed in the light most favorable to the CNMI, was simply insufficient to show that Tropical owned the towel in Wang's possession at the time of her arrest. In light of this decision, we need not reach the issue of whether Wang possessed the requisite criminal intent.[20]

First, that the towel was not on the same table as Wang's clothes is not probative of the issue of ownership.[21]

Second, the record is devoid of any testimony from Tropical or Diamond that the towel in Wang's possession belonged to Tropical *at the time of Wang's arrest*. McFee, upon whose statement of ownership John initially relied, never testified.

Rosalia Cacdac ("Cacdac") and Yoshiro Katsunoi ("Yoshiro"), respectively Tropical's accountant and general manager, each testified that once the towels leased by Diamond were deemed "used," they were sold, still bearing the "Tropical Laundry" tag. Cacdac also testified that anyone could purchase these towels from the retail counter at Tropical.[22] Hence, their testimony indicates that any number of persons not associated with either Diamond or Tropical could lawfully be in possession of towels which bore a "Tropical Laundry" tag and otherwise "looked like any other towel that the hotel had rented from Tropical."

Finally, the testimony of the guards did not support Tropical's ownership of the towel at the time of Wang's arrest. None of the guards closely examined the towel.[23] They based their belief of ownership on the "Tropical Laundry" tag on, and/or the yellow color of, the towel.[24]

---

[16] The court, in its bench ruling, never made a specific conclusion as to who owned the towel; it did note, however, that it concluded that Wang did not own the towel. From this we may reason, by the conviction, that it concluded that Diamond and/or Tropical had an interest in the towel.

[17] *But see* Transcript of Proceedings at 154 (testimony of Manuel Cisnero that clothes and towel were placed together on a chair).

[18] There is no trial testimony going to whether Wang was arrested on or off the hotel premises. From the record, we know only that she left the hotel pool area, began to walk north, and met up with John somewhere near the road. It appears as though the court may have made this finding based upon pretrial testimony, see, e.g., *id.* at 34 (testimony of Sylvan M. Rangamar), which was not duplicated at trial.

[19] *See* Appellee's Brief at 24.

[20] However, neither the flight nor belligerency of a defendant will necessarily suffice to show that the defendant possessed the requisite criminal intent. *See Wong Sun v. United States*, 371 U.S. 471, 483 n.10, 83 S. Ct. 407, 515, 515 n.10, 9 L. Ed. 2d 441, 452 n.10 (1963) (noting that it has "consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime" to indicate criminal intent) and *Peterson v. City of Plymouth*, 60 F.3d 469, 476-77 (8th Cir. 1995) (lack of criminal intent and, hence, probable cause to arrest, despite the suspect's admitted "refus[al] to identify himself or otherwise cooperate with the

[arresting] officers"). This is particularly true in this matter, as Wang's actions appear to derive from her insistence that she owned the towel.

[21] For example, an individual always brings her own towel with her when she goes swimming, leaving the towel closer to the pool for easy access and her clothes further away, so as not to get them wet from inadvertent splashing. That the clothes and towel were not placed together has no bearing on the issue of her ownership of the towel.

[22] Cacdac and Yoshiro each testified that used towels bearing a "Tropical Laundry" tag were sold to a variety of business entities, Transcript of Proceedings at 224, 226 (testimony of Yoshiro Katsunoi), 247-48, 250 (testimony of Cacdac), and barracks, *id.* at 250 (testimony of Cacdac), and that some towels were also thrown away at the dump. *Id.* at 227-28 (testimony of Yoshiro), 249 (testimony of Cacdac). Cacdac also testified that anyone may purchase used towels, for two dollars per pound, at Tropical's retail counter. *Id.* at 248.

[23] *See id.* at 180, 195, 200 (testimony of John), 162-63 (testimony of Manuel), 215-16 (testimony of Antipas Paling) (stating first that he looked at the towel but then noting that he did not see a tag on the towel).

[24] *See id.* at 179 (testimony of John), 164 (testimony of Manuel), 211-13 (testimony of Paling).

Yet, as noted above, these characteristics alone are insufficient to show continued ownership in Tropical.

Also, between towels used for demonstrative purposes by the CNMI and Wang to show the specific condition and coloring of the towel,[25] each guard ultimately testified that the towel in Wang's possession, or hotel towels, looked more like the defense exhibit, which had been purchased from the retail counter as a "used" towel. *See supra* note 25.[26]

## CONCLUSION

Based on the foregoing, we hereby **REVERSE** the conviction of the defendant Wang Hong Yan for theft under 6 CMC § 1601(a).

---

[25] Because the towel in Wang's possession had been given to Hernandez, each party produced towels to elicit testimony from the guards showing the condition of the towel Wang was using. The defense towel was a used towel purchased from Tropical. *See, e.g., id.* at 248 (test. of Cacdac). The source of the CNMI's exhibit is not clear from the record, see *id.* at 192 (objection of defense to admission of CNMI exhibit into evidence). However, from the testimony, the CNMI exhibit appears to have been less faded than the defense exhibit, but bore several stains, was frayed and bore tag lettering which was green and not blue. *See, e.g., id.* at 190-91. It is also not clear from the record whether the defense exhibit was entered into evidence. The court did not enter the CNMI exhibit into evidence, instead choosing to "look at it." *Id.* at 192.

[26] *See id.* at 191, 196 (testimony of John) (between CNMI and defense exhibits, the latter looked more like the towel Wang had that day), 162-165 (testimony of Manuel) (testifying CNMI exhibit "substantially" like the towel Wang had but identifying defense exhibit as a hotel towel), 213-15 (testimony of Paling) (noting similarities between CNMI exhibit and hotel towels and stating that, as compared to CNMI exhibit, towel Wang had was "like already old one sir and th[e CNMI exhibit] is just little bit new one sir").