# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 03-2534/2790

_____

| | | |
|---|---|---|
| Patricia Littrell, | * | |
| | * | |
| Appellant/Cross-Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Daniel Jake Franklin, in his official | * | Western District of Arkansas. |
| and individual capacities, | * | |
| | * | |
| Appellee/Cross-Appellant. | * | |
| | * | |
| | * | |

_____

Submitted: May 14, 2004
Filed: November 2, 2004

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

On February 9, 2001, Officer Daniel Jake Franklin responded to a concerned motorist's report of possible drunk driving. When Officer Franklin arrived on the scene, he initiated a traffic stop of Patricia Littrell's vehicle. Ms. Littrell readily admitted she was intoxicated, and Officer Franklin attempted to place her under arrest. The apprehension ultimately resulted in a deep laceration on Ms. Littrell's forehead and a broken right arm. Believing she was the victim of the unconstitutional use of excessive force, Ms. Littrell filed suit under 42 U.S.C. § 1983

against Officer Franklin in federal district court. A jury found that Officer Franklin used excessive force but found that his conduct was not objectively unreasonable in light of clearly established law. The district court, therefore, entered judgment in favor of Officer Franklin on the ground that the qualified immunity doctrine shielded him from suit. Ms. Littrell appeals. Officer Franklin cross-appeals several evidentiary rulings made throughout the course of the trial. We believe the district court improperly submitted the legal question of qualified immunity to the jury. We affirm, however, because Ms. Littrell did not object to the district court's submission of the issue of qualified immunity to the jury, and under the final prong of the plain error test, this error was not "sufficiently fundamental to threaten the fairness or integrity or public reputation of the judicial proceeding." Gray v. Genlyte Group, Inc., 289 F.3d 128, 134 (1st Cir.), cert. denied, 537 U.S. 1001 (2002).

## I. FACTUAL BACKGROUND

This is an appeal from the district court's entry of judgment as a matter of law in favor of Officer Franklin following a jury verdict that found he used excessive force when he apprehended Ms. Littrell. Officer Franklin stopped Ms. Littrell's vehicle after he received a report that she was driving erratically. Ms. Littrell testified that when she pulled her car over, she knew she was intoxicated and immediately put her arms behind her back in preparation for being handcuffed and arrested. She asserted that she did not struggle until after Officer Franklin broke her arm. At that point, she admitted that she resisted Officer Franklin's attempts to handcuff her because she was in extraordinary pain. Contrary to Ms. Littrell's account, however, Officer Franklin testified that Ms. Littrell was uncooperative and swung at him after he handcuffed her right wrist. He contended that he did not execute the "straight arm bar takedown" that broke Ms. Littrell's arm until she became confrontational.

In addition, Ms. Littrell maintains that she made clear she was seriously injured, yet Officer Franklin disregarded her obvious pain, handcuffed her, and put

her in the squad car. The officer who assisted Ms. Littrell from the squad car at the emergency room testified it was immediately apparent to him that her arm was broken when he touched it. Officer Franklin denied having any indication that Ms. Littrell was injured. In spite of their different accounts of the incident, the parties agree that Officer Franklin's actions resulted in a complete break of Ms. Littrell's right humerus—the upper arm bone. The doctor who treated Ms. Littrell in the emergency room that night, Dr. Burton K. Bledsoe, testified that it is difficult to break a human bone and that a complete break, such as Ms. Littrell's, would be very painful.

The concerned motorist who initially contacted the police about Ms. Littrell's driving, Robbie Freeman, watched the scene unfold. He testified that Officer Franklin was very aggressive and slammed Ms. Littrell into her car's back window. In addition, Mr. Freeman testified that he thought Officer Franklin had "gone too far" and felt he needed to call the police again—this time to report Officer Franklin. Mr. Freeman characterized Officer Franklin's actions as a "vicious attack." Contrary to Mr. Freeman and Ms. Littrell's testimony, Officer Franklin testified that he was calm throughout the arrest, that Ms. Littrell did not complain of pain in her arm, and that he did not slam Ms. Littrell into the rear window of her car.

Following trial, a state court convicted Ms. Littrell of resisting arrest. The district court in the present civil case provisionally granted Ms. Littrell's motion *in limine* and excluded evidence of her state conviction. The district court did allow the parties and witnesses to testify as to their observations and perceptions. During cross-examination, Ms. Littrell volunteered that she "resisted arrest." She stated that, after Officer Franklin injured her arm, she "totally resisted arrest" and fought to keep him from handcuffing her because she was experiencing horrific pain. Thereafter, Ms. Littrell stipulated to the admission of her state court conviction for resisting arrest.

Prior to trial, the district court dismissed an official capacity claim against Officer Franklin. That ruling is not at issue in this appeal. The case proceeded to trial. Even though it would have been preferable for Officer Franklin to have sought a pre-trial ruling on the issue of qualified immunity, Officer Franklin did not raise the issue until trial, when he asserted it as a defense. The district court presented the qualified immunity question to the jury in the form of an interrogatory. The verdict form posed four questions. The first asked, "Do you find, from a preponderance of the evidence, that defendant Franklin used excessive force when he arrested plaintiff on February 9, 2001?" The jury responded, "Yes." The second interrogatory asked, "Do you find, from a preponderance of the evidence, that defendant Franklin reasonably believed that his conduct on February 9, 2001, with respect to the plaintiff, was objectively reasonable in light of the legal rules clearly established at that time?" Again, the jury responded, "Yes."

Because of its affirmative response to the second interrogatory, the jury was instructed not to answer the third and fourth questions on the verdict form, which pertained to damages. In accordance with the jury's response to the second interrogatory, the district court entered judgment in favor of Officer Franklin, finding that he was entitled to judgment as a matter of law on the basis of qualified immunity. These appeals followed.

In Ms. Littrell's appeal,[1] she argues that the district court's submission of the second interrogatory to the jury was erroneous because the reasonableness of an

---

[1]Ms. Littrell also appealed on the alternative ground that defense counsel argued facts not in evidence in closing argument. We reject her argument, however, because she was not prejudiced, as evidenced by the jury's verdict in her favor on the issue of excessive force. See Billingsley v. City of Omaha, 277 F.3d 990, 997 (8th Cir. 2002) (commenting that, to warrant a new trial, allegedly improper conduct during closing argument must be "'plainly unwarranted and clearly injurious.'" (quoting Griffin v. Hilke, 804 F.2d 1052, 1057 (8th Cir. 1986))).

officer's actions in light of clearly established law is a question of law for the court, and not the jury, to determine. Officer Franklin concedes this point, but counters that the district court made an independent finding that Officer Franklin was entitled to qualified immunity. Officer Franklin also cross-appeals and contends that several evidentiary rulings constituted reversible error. Because we affirm the district court's entry of judgment as a matter of law in favor of Officer Franklin, we need not address his challenge to the district court's adverse evidentiary rulings.

## II. Discussion

"Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Yowell v. Combs, 89 F.3d 542, 544 (8th Cir. 1996); accord Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). "What this means in practice is that 'whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.'" Wilson v. Layne, 526 U.S. 603, 614 (1999) (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)). The Supreme Court has generously construed qualified immunity protection to shield "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In other words, "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

Courts employ a two-part inquiry to determine whether a lawsuit against a public official can proceed in the face of the official's assertion of qualified

immunity.  See Saucier v. Katz, 533 U.S. 194, 201 (2001); Coleman v. Parkman, 349 F.3d 534, 537-38 (8th Cir. 2003) (describing qualified immunity inquiry as a two-part test); Tuggle v. Mangan, 348 F.3d 714, 720 (8th Cir. 2003) (same); Meloy v. Bachmeier, 302 F.3d 845, 848-49 (8th Cir. 2002) (same); Ware v. Morrison, 276 F.3d 385, 387 (8th Cir. 2002) (same); Washington v. Normandy Fire Prot. Dist., 272 F.3d 522, 526 (8th Cir. 2001) (same).  This inquiry must be undertaken in the "proper sequence."  Saucier, 533 U.S. at 200.  First, courts must consider whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right."  Id. at 201.  The "existence or nonexistence of a constitutional right" is, therefore, the threshold question.  Id.

The second step of the qualified immunity analysis requires courts "to ask whether the right was clearly established."  Id.  This is a fact-intensive inquiry and "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Id.  "For a right to be deemed clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Buckley v. Rogerson, 133 F.3d 1125, 1128 (8th Cir. 1998) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  We have stated,

> The second step of the qualified immunity inquiry will . . . shield the officers from suit . . . if their conduct was objectively legally reasonable in light of the information they possessed at the time of the alleged violation.  See Harlow, 457 U.S. at 818-19, 102 S. Ct. 2727.  In other words, if the officers' mistake as to what conduct the law required is reasonable, they are entitled to the immunity defense.  Saucier, 533 U.S. at 205, 121 S. Ct. 2151.  Defendants will not be immune, however, "['] if, on an objective basis, it is obvious that no reasonably competent officer would have concluded' that the defendant should have taken the disputed action."  Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

Kuha v. City of Minnetonka, 365 F.3d 590, 601-02 (8th Cir. 2003). "Thus, . . . in light of the Anderson definition of 'clearly established,' the question 'whether the . . . right was clearly established at the time the defendant acted . . . requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident.'" Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (first alteration provided) (quoting Conroe Creosoting Co. v. Montgomery County, 249 F.3d 337, 340 (5th Cir. 2001)).

Here, as to the first step of the qualified immunity analysis, Ms. Littrell asserted that Officer Franklin violated her right to be free from excessive force. We analyze excessive force claims related to arrests under the Fourth Amendment. E.g., Graham v. Connor, 490 U.S. 386, 395 (1989). To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, "the test is whether the amount of force used was objectively reasonable under the particular circumstances." Greiner v. City of Champlin, 27 F.3d 1346, 1354 (8th Cir. 1994). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. The Supreme Court has instructed, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396-97. "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1081 (8th Cir. 1990). "In addition to the circumstances surrounding the use of force, we may also consider the result of the force." Crumley v. City of St. Paul, Minn., 324 F.3d 1003, 1007 (8th Cir. 2003); Patzner v. Burkett, 779 F.2d 1363, 1371 (8th Cir. 1985) (stating that, in considering the reasonableness of force used, the extent of any resulting injuries is relevant).

The district court similarly defined "excessive force" and instructed the jury that, in order to find in Ms. Littrell's favor, it must find:

First, that defendant Franklin used force in making the arrest of plaintiff and as a result of such use of force, plaintiff's arm was broken and she suffered other injuries;

Second, that the use of such force was excessive because it was not reasonably necessary to restrain plaintiff and effectuate her arrest; and

Third, that as a direct result, plaintiff sustained injuries.

In determining whether such force was not reasonably necessary, you must consider such factors as:

The need for the application of force;

The threat reasonably perceived by a responsible officer;

The relationship between the need for force and the amount of force that was actually used;

The nature and extent of the injuries inflicted; and,

Whether a reasonable officer on the scene, without the benefit of 20/20 hindsight, would have used such force under similar circumstances.

(Tr. at 436-37.)  This instruction tracks Eighth Circuit Model Jury Instruction (Civil) 4.10 (2001).

The district court properly submitted the issue of excessive force to the jury, and the jury found that Officer Franklin violated Ms. Littrell's constitutional right to be free from excessive force. See Foster v. Metro. Airports Comm'n, 914 F.2d 1076,

1081 (8th Cir. 1990) ("The question for the jury is whether, judging from the perspective of a reasonable officer at the scene of the arrest, the totality of the circumstances justifies the use of the force used."); see also, Billingsley v. City of Omaha, 277 F.3d 990, 995-97 (8th Cir. 2002) (approving the submission of Eighth Circuit Model Jury Instruction (Civil) 4.10 for jury determination of an excessive force claim under the Fourth Amendment's reasonableness standard); Goff v. Bise, 173 F.3d 1068, 1073-74 (8th Cir. 1999) (affirming a district court's denial of an officer's motion for judgment as a matter of law on the issue of excessive force where the evidence was sufficient to create a jury question as to whether the officer used an objectively unreasonable amount of force); Jackson v. Crews, 873 F.3d 1105, 1107-08 (8th Cir. 1989) (rejecting an officer/defendant's challenge to excessive force instructions following a jury determination that the officer/defendant used excessive force).  Officer Franklin does not appeal the sufficiency of the evidence to support this finding, and Ms. Littrell does not suggest that the district court misstated the standards for excessive force.

After the jury found that Officer Franklin used excessive force when he apprehended Ms. Littrell, it found (in the form of its response to interrogatory number two) that he reasonably believed his actions were objectively reasonable in light of clearly established law.  Ms. Littrell contends that the district court erroneously submitted this second question to the jury because the court—not the jury—is charged with determining whether a defendant is entitled to qualified immunity. Ms. Littrell does not contend that the second interrogatory misstated the law of qualified immunity.  Rather, she argues merely that the district court itself should have made the qualified immunity ruling.

Ms. Littrell is correct.  The law of our circuit is clear.  The issue of qualified immunity is a question of law for the court, rather than the jury, to decide: "[I]t is the province of the jury to determine disputed predicate facts, the question of qualified immunity is one of law for the court." Peterson v. City of Plymouth, 60 F.3d 469,

473 n.6 (8th Cir. 1995); accord Alvarado v. Picur, 859 F.2d 448, 451 (7th Cir. 1988) (rejecting a jury instruction that told jurors the defendants would be immune from suit if their actions did not violate clearly established law, reasoning "[h]ow was the jury supposed to determine the law on the dates in question?  And, if the jury somehow could determine the law on the dates in question, how was it supposed to determine if that law was 'clearly established'?"); McIntosh v. Weinberger, 810 F.2d 1411, 1431 n.8 (8th Cir. 1987) (stating that instruction requiring jury to examine the objective reasonableness of officer's conduct was error because question of qualified immunity is "predominantly legal in character"), cert. granted, judgment vacated on other grounds by Turner v. McIntosh, 487 U.S. 1212 (1988).  "The court, rather than the trier of fact, is to determine 'whether the facts alleged . . . support a claim of violation of clearly established law.'"  McIntosh, 810 F.2d at 1431 n.8 (quoting Mitchell v. Forsyth, 472 U.S. 511, 528 n.9 (1985)).

The issue of qualified immunity, however, is frequently intertwined with unresolved factual questions.  Where, as in this case, factual questions prevent a district court from ruling on the issue of qualified immunity, it is appropriate to tailor special interrogatories specific to the facts of the case.  This practice allows the jury to make any requisite factual findings that the district court may then rely upon to make its own qualified immunity ruling.  "[S]pecial interrogatories related to [the qualified immunity] defense [are] not improper *per se*," Lampkins v. Thompson, 337 F.3d 1009, 1014 (8th Cir. 2003), but they must be carefully crafted so that "[t]he fact-finder's role is limited to determining whether the underlying facts are as the plaintiff has alleged or proved."  McIntosh, 810 F.2d at 1431 n.8; accord Peterson, 60 F.3d at 476 (granting new trial where district court submitted qualified immunity issue to jury and stating "the role of the jury in the new trial should be limited to determining what the officers knew at the time of the arrest.  In light of the jury's findings, the court should then determine the legal questions of probable cause and qualified immunity.").

On the facts of this case, special interrogatories should have asked (1) whether Ms. Littrell resisted arrest before Officer Franklin forcibly restrained her and (2) whether Officer Franklin knew Ms. Littrel was injured when he continued to handcuff and forcibly place her in the car. Specific findings on these questions of fact would have enabled the district court to address the legal issue of qualified immunity through reference to excessive force standards that are clearly established. See Thompson v. Zimmerman, 350 F.3d 734, 735 (8th Cir. 2003) (finding that factual questions precluded summary judgment on qualified immunity grounds where an inmate alleged that he was sitting quietly in his cell and did not resist when officers entered his cell and attacked him); Rodriguez, 280 F.3d 1341, 1352 (11th Cir. 2002) (finding that the use of force and handcuffs that resulted in the need for twenty-five future surgeries and, ultimately, amputation of the arm below the elbow, did not comprise a constitutional violation because the officer did not know of the defendant's prior surgeries or susceptibility to injury); Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000) (finding the law clearly established that the release of a police dog on a burglary suspect who complied with officer's demands to stop and get down on the ground and did not resist arrest was excessive and stating, "[c]onsidering these facts, no particularized preexisting case law was necessary"); Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998) (denying summary judgment where defendant wore arm in a sling and officer therefore could see that defendant was injured when officer applied damaging force to arm); Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1394 (8th Cir. 1997) (finding that the use of excessive force violated clearly established law where an inmate plaintiff was restrained and offered no resistance); Walton v. City of Southfield, 995 F.2d 1331, 1342 (6th Cir. 1993) (denying summary judgment on qualified immunity where an excessive use of force claim could be premised on an officer handcuffing a plaintiff if the officer knew the plaintiff had an injured arm and if he believed that she posed no threat to him). Again, with specific reference to the use of force and handcuffs, we stated:

Here, [the plaintiff] alleges that although he did not resist arrest or take an aggressive stance, [the officer] forced him against his truck, twisted his arm, and raised it high behind his back injuring his collar bone, shoulder, neck, and wrist. [The plaintiff] also claims the handcuffs were so tight that they broke his wrist and were not loosened for fifteen minutes despite his repeated complaints. Considering the circumstances, including the offense at issue, the lack of an immediate safety threat, and the lack of active resistance to arrest, we agree that there is a genuine issue of whether the force used was excessive, so the district court properly denied summary judgment to [the officer].

Kukla v. Hulm, 310 F.3d 1046, 1050 (8th Cir. 2002).

In short, where questions of historical fact exist, the jury must resolve those questions so that the court may make the ultimate legal determination of whether officers' actions were objectively reasonable in light of clearly established law. See Johnson v. Breeden, 280 F.3d 1308, 1318 (11th Cir. 2002) ("It is important to recognize, however, that a defendant is entitled to have any evidentiary disputes upon which the qualified immunity defense turns decided by the jury so that the court can apply the jury's factual determinations to the law and enter a post-trial decision on the defense."). The specific contours of a plaintiff's rights may be established through reference to prior cases. Carefully drafted interrogatories allow jurors to decide factual issues and preserve the ultimate legal determination for the court. It is error, however, to submit the ultimate question of qualified immunity to the jury.

Our inquiry, however, does not end here. The district court relied on Fifth Circuit precedent when it submitted the qualified immunity question to the jury. See Sikes v. Gaytan, 218 F.3d 491, 493-94 (5th Cir. 2000) (affirming the manner in which a trial court submitted the issue of qualified immunity to a jury); Snyder v. Trepagnier, 142 F.3d 791, 800 (5th Cir. 1998) ("So, 'if . . . there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question.'" (quoting Presley v. City of Benbrook, 4 F.3d 405, 410 (5th Cir.

1993))). Ms. Littrell objected to neither this practice nor the content of the second interrogatory submitted to the jury. She does not argue that she offered alternate instructions that the district court rejected. We, therefore, review the district court's judgment only for plain error. See Horstmyer v. Black & Decker, (U.S.), Inc., 151 F.3d 765, 770 (8th Cir. 1998) ("Absent plain error, appellants must raise specific objections to the form or content of jury instructions, including special interrogatories, before the district court in order to preserve such matters for appeal.").

"Plain error is a stringently limited standard of review, especially in the civil context . . . ." Id. at 771. To constitute plain error, there must be an "error," which is a "[d]eviation from a legal rule," and that error must be "plain," which "is synonymous with 'clear' or, equivalently, 'obvious.'" United States v. Olano, 507 U.S. 725, 732-34 (1993). Moreover, "the party claiming plain error [must] demonstrate . . . that [the alleged error] likely altered the outcome[] and . . . that it was sufficiently fundamental to threaten the fairness or integrity or public reputation of the judicial proceeding." Gray v. Genlyte Group, Inc., 289 F.3d 128, 134 (1st Cir.), cert. denied, 537 U.S. 1001 (2002). We have repeatedly emphasized the stringency of this standard. See Bradley v. Widnall, 232 F.3d 626, 634 (8th Cir. 2000) (stating that plain error review is "narrow" and confined to "exceptional" cases); Rush v. Smith, 56 F.3d 918, 922 (8th Cir. 1995) (stating that plain error review permits reversal "only if the error prejudices the substantial rights of a party and would result in a miscarriage of justice if left uncorrected"); Lange v. Schultz, 627 F.2d 122, 127 (8th Cir. 1980) ("Only in extraordinary situations, in order to prevent a plain miscarriage of justice, will a reviewing court reverse a judgment based upon errors not objected to at trial.") (internal quotation marks omitted).

After reviewing the record and considering the instructions as a whole, it is not clear Ms. Littrell demonstrated that submission of the qualified immunity issue to the jury actually affected the outcome of the proceedings. Regardless of its impact on the

outcome, however, we do not believe the error was sufficiently fundamental to threaten "the fairness or integrity or public reputation of the judicial proceedings." Board of Water Works Trs. of City of Des Moines v. Alvord, Burdick & Howson, 706 F.2d 820, 824 (8th Cir. 1983). Submission of the qualified immunity issue to the jury was wholly consistent with the practice of the Fifth Circuit. Although different from our own practice, we do not think the Fifth Circuit's practice is fundamentally unfair or in any way threatens the integrity of the judicial process. Importantly, the Supreme Court has not censured the Fifth Circuit's practice. This is true even though there exists a split among the circuits as to the proper apportionment of responsibility between juries and judges in this context.[2] Against this backdrop, we do not find that reliance on the practice of the Fifth Circuit resulted in the sort of error that we may properly characterize as plain error. See United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (holding that there could be no plain error where the error alleged involved a circuit split and the Supreme Court had not spoken on the issue).

The judgment of the district court is affirmed.

_____

---

[2]The Supreme Court did grant cert. in the Fifth Circuit case of Snyder v. Trepagnier, supra, but the issues upon which the Court granted cert. were more limited than the general question of whether a jury may make the ultimate determination of whether to grant qualified immunity. See 525 U.S. 1098 (1999) (granting cert. on the issues of: "1. Whether a jury finding that a constitutional violation incurred by use of excessive force in an arrest necessarily precludes a finding of qualified immunity, so as to make such dual findings irreconcilable? And 2. Whether a reviewing court may reconcile apparent inconsistencies in special jury verdicts despite possible defects in special interrogatories submitted, by determining whether, upon review of the entire record, the verdict as a whole was reasonable and supported by the evidence?"). The Court, however, dismissed the case before arguments. See 526 U.S. 1083 (1999).