# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-3770/3771

_____

Courtney Richmond,

      Appellant/Cross-Appellee,

      v.

City of Brooklyn Center, a municipal
corporation; Brian Robert Bruce,
individually and in his capacity as a
police officer in the Police Department
of the City of Brooklyn Center;
Garrett Flesland, individually and in
his capacity as a police officer in the
Police Department of the City of
Brooklyn Center; Mike Reynolds,
individually and in his capacity as a
police officer in the Police Department
of the City of Brooklyn Center,

      Appellees/Cross-Appellants.

Appeals from the United States
District Court for the
District of Minnesota.

_____

Submitted: June 16, 2006
Filed: June 21, 2007

_____

Before MELLOY,[1] SMITH and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Courtney Richmond sued the City of Brooklyn Center, Minnesota and three of its police officers, Robert Bruce, Garrett Flesland and Mike Reynolds, for alleged civil rights violations arising from a strip search of Richmond in his motel room. A jury found that Officer Bruce conducted the strip search in an unreasonable manner but that the search did not cause actual injury to Richmond. As a result, the district court reduced the jury's $35,000 "nominal" damages award to one dollar. Richmond appeals the reduction of damages, while Officer Bruce cross-appeals the district court's denial of qualified immunity. For the reasons discussed below, we reverse the district court's denial of qualified immunity and direct entry of judgment for Officer Bruce.

## I.    BACKGROUND

On April 29, 2001, Brooklyn Center police received an anonymous tip that drugs were being sold from three identified rooms at a local Motel 6. Officers Bruce, Flesland and Reynolds were dispatched to the Motel 6. The officers knocked at all three rooms, but they received a response from only one room. The officers were allowed entry into that room, where they smelled marijuana and observed marijuana cigarettes. The officers then proceeded to the motel's front desk and obtained a guest list. Officer Bruce called one of the two remaining rooms on his cell phone, and Richmond answered. Officer Bruce did not identify himself. According to Richmond, Officer Bruce asked about buying drugs, and Richmond simply hung up

_____

[1]The Honorable Gerald W. Heaney retired on August 31, 2006. This opinion is filed by the remaining members of the panel and the Honorable Michael J. Melloy, who was designated, pursuant to 8th Circuit Rule 47E, to replace Judge Heaney on the panel.

the phone. Officer Bruce, on the other hand, claimed that he made no mention of drugs and that he pretended he had dialed a wrong number.

After the phone call, the officers returned to Richmond's motel room, and Richmond came to the door. The officers spoke with Richmond through the partially open door, informing him that they had received a report about possible narcotics activity in his room. Richmond stated that his name was Tyrone Johnson and gave a date of birth. The officers requested a computer check of the name and date of birth and received a response of "not on file." The officers informed Richmond that they believed he had given a false name. Richmond soon told police that his real name was Courtney Richmond and admitted that there was an outstanding warrant for his arrest. The officers entered the room and arrested Richmond.

The ensuing search revealed a small amount of marijuana in Richmond's shirt pocket and over $1,300 in cash in Richmond's pants, as well as cell phones, pagers and "tear-offs."[2] The officers requested a computer check of Richmond's real name and learned that Richmond had several previous felony narcotic arrests. Officer Bruce informed Richmond that he believed Richmond likely was concealing drugs on his person and that Bruce was going to check his "crotch area." Officer Flesland held Richmond, who was handcuffed, above the elbow to prevent him from pulling away or pivoting. Officer Bruce unbuckled Richmond's belt and let Richmond's pants fall to the ground. Officer Bruce then lowered Richmond's boxer shorts with two hands and visually inspected, without touching, Richmond's genitalia and buttocks. Officer Bruce observed that Richmond was clenching his buttocks. Richmond testified that Officer Flesland then forcibly bent him over a table, while Officers Bruce and Flesland testified that Richmond leaned forward on his own at Officer Bruce's request and that there was no table in front of him. When Richmond was positioned forward,

---

[2]"Tear-offs" are the corners of plastic baggies tied off and torn away from the rest of the baggie, used to package narcotics for sale.

Officer Bruce observed a piece of tissue protruding from Richmond's buttocks. Officer Bruce put on a latex glove and, according to Officer Bruce, grabbed the corner of the tissue with a quick swiping motion, avoiding contact with Richmond's skin, and threw the tissue to the ground. According to Richmond, Officer Bruce penetrated Richmond's anus to retrieve the tissue and then reinserted two or three fingers into Richmond's anus and "moved them around." Richmond yelled and swore during the search and testified that he felt as though he was being raped. The tissue retrieved from Richmond's buttocks contained 3.7 grams of cocaine.

In Richmond's state criminal prosecution, the state court suppressed the 3.7 grams of cocaine as the fruit of an illegal search, and the charges against Richmond were dismissed. Richmond later filed the instant action against the City of Brooklyn Center and Officers Bruce, Flesland and Reynolds, claiming damages under 42 U.S.C. § 1983 for an unreasonable search. The district court denied the defendants' motion for summary judgment based on qualified immunity, finding, inter alia, a disputed question of material fact as to whether a body-cavity search occurred and concluding that qualified immunity was not appropriate on the facts as set forth by Richmond. The defendants did not pursue an interlocutory appeal.

The case proceeded to a four-day jury trial on Richmond's claims that the officers performed an unreasonable strip search or body-cavity search, used excessive force, and committed assault and battery. The district court submitted to the jury a special verdict form with 31 special interrogatories. The jury found that (1) no officer used excessive force, assaulted or battered Richmond; (2) the alleged body cavity search of Richmond did not occur; (3) exigent circumstances were present to justify a body cavity search, had one occurred; (4) the officers had reasonable suspicion to support the strip search; (5) Officer Bruce did not conduct the strip search in a

-4-

reasonable manner;[3] and (6) the strip search was not a direct cause of injury to Richmond. Despite the finding of no actual damages and a jury instruction stating that, in the absence of damages, nominal damages should be $1, the jury awarded nominal damages of $35,000.

Richmond moved for a new trial on the issues of whether the strip search caused actual damages, whether the officers had reasonable suspicion to conduct a strip search, whether Officer Flesland behaved reasonably and whether a body cavity search occurred. Officer Bruce moved for judgment as a matter of law based on qualified immunity and for a reduction of the nominal damages award to $1. The district court denied all post-trial motions save Officer Bruce's motion to reduce the nominal damages to $1. Richmond now appeals the reduction of nominal damages and the denial of his motion for a new trial on the issue of whether he suffered actual damages, while Officer Bruce cross-appeals the denial of qualified immunity and the exclusion of certain evidence.

## II.    DISCUSSION

We first address Officer Bruce's cross-appeal of the denial of his post-trial motion for judgment as a matter of law based on qualified immunity. "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006). To determine whether an officer is entitled to qualified immunity, we ask first whether the officer's conduct violated a constitutional right, and second whether that right was clearly established at the time of the deprivation "in light of the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

---

[3]The jury found that Officer Flesland's conduct during the strip search was reasonable.

We review the district court's determination of qualified immunity de novo. *Hill v. McKinley*, 311 F.3d 899, 902 (8th Cir. 2002). Where qualified immunity is asserted in a motion for judgment as a matter of law, we view the facts in the light most favorable to the prevailing party at trial. *See id.* In particular, we rely on the jury's factual findings on the special verdict form in making our qualified immunity ruling. *Littrell v. Franklin*, 388 F.3d 578, 585 (8th Cir. 2004). On some of these special findings Richmond prevailed at trial, while on others the defendants prevailed. To the extent facts covered by a special interrogatory affect the qualified immunity analysis, we must view those facts in the light most favorable to the jury's special verdict.

The Fourth Amendment reasonableness of a strip search turns on "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). The facts regarding the location, justification and scope of the strip search in the instant case are relatively well-defined. It is undisputed that the search took place in Richmond's motel room. With regard to justification, there is no challenge on appeal to the jury's finding that the officers had reasonable suspicion to conduct a strip search. *Cf. Jones v. Edwards*, 770 F.2d 739, 741-42 (8th Cir. 1985) (finding a strip search of an arrestee violated the Fourth Amendment where authorities had no reasonable suspicion of concealed weapons or contraband). With regard to scope, the jury rejected Richmond's testimony that a body cavity search occurred. The only other testimony regarding the scope of the search was that it consisted of a visual-only inspection of Richmond's genitals and buttocks, followed by the removal of tissue from his clenched buttocks with a quick swiping motion.

The most difficult facts to resolve are those regarding the manner of the search. It is undisputed that, while Richmond was handcuffed and held above the elbow by Officer Flesland, Officer Bruce unbuckled Richmond's belt, let Richmond's pants fall to the ground and then lowered Richmond's boxer shorts with two hands. The jury was not given a special interrogatory to resolve whether Officer Flesland then forcibly

bent Richmond over a table, as Richmond alleged, or rather Richmond leaned forward on his own at Officer Bruce's request with no table in front of him. However, the jury did find specifically that Officer Flesland's conduct regarding the strip search of Richmond was reasonable. Finally, it is undisputed that Officer Bruce was wearing a latex glove when he retrieved the tissue from Richmond's buttocks.

The defendants do not dispute on appeal the jury's finding that Officer Bruce conducted the strip search in an unreasonable manner in violation of Richmond's Fourth Amendment rights. Therefore, we proceed directly to the second prong of the qualified immunity analysis, which asks whether the asserted constitutional right was clearly established. *See Littrell*, 388 F.3d at 584.[4] A right is clearly established only if the contours of the right are so defined at the time of the incident that a reasonable officer in the defendant's position would have understood that what he was doing violated the law. *Parks v. Pomeroy*, 387 F.3d 949, 957 (8th Cir. 2004). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."

---

[4]*Saucier* instructs that in qualified immunity analyses at the summary judgment stage, the court should address the first prong of the qualified immunity analysis and expressly decide as a matter of law whether a constitutional violation occurred based on the facts asserted by the plaintiff. *See Hill*, 311 F.3d at 903 ("This inquiry is made first so that even if the right asserted is not clearly established, a determination that it was violated might 'set forth principles which will become the basis for a holding that a right is clearly established.'" (quoting *Saucier*, 533 U.S. at 200)). However, *Saucier* does not compel us to perform the first-prong analysis after a trial on the merits where the parties have not raised the issue on appeal. We naturally have performed the post-verdict first-prong analysis in a case where the defendants disputed on appeal the jury's finding that a constitutional violation occurred, *see Hill*, 311 F.3d at 902-03, but we have declined to do so where, as here, the defendants did not challenge the sufficiency of the evidence for the jury's finding of a constitutional violation, *see Littrell*, 388 F.3d at 584. Consequently, we need not determine whether the evidence supported a finding of a constitutional violation in the instant case.

*Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004). Whether a right is clearly established is a question of law that we review de novo. *Hill*, 311 F.3d at 902.[5]

We hold that a reasonable officer in the defendant's position would not have understood that the strip search of Richmond in his motel room would violate his constitutional rights. The law in April 2001 was clear that strip searches should be conducted in an area as removed from public view as possible without compromising legitimate security concerns. *See Franklin v. Lockhart*, 883 F.2d 654, 656-57 (8th Cir. 1989) (holding that visual body cavity searches of prison inmates conducted within view of four to six other inmates did not violate the Fourth Amendment because any measures taken to increase privacy would implicate legitimate prison security concerns); *see also Hill v. Bogans*, 735 F.2d 391, 393-94 (10th Cir. 1984) (finding the manner of a strip search of an arrestee unreasonable where it was conducted in a police station lobby area with "ten to twelve people . . . milling about"). The law was also clear that strip searches should be conducted by officials of the same sex as the individual to be searched. *E.g.*, *Roberts v. Rhode Island*, 239 F.3d 107, 113 (1st Cir. 2001); *see also Justice v. Peachtree City*, 961 F.2d 188, 193 (11th Cir. 1992). Finally, the law was clear that strip searches should be performed in a hygienic fashion and not in a degrading, humiliating or abusive fashion. *Cf. Seltzer-Bey v. Delo*, 66 F.3d 961,

---

[5]The district court erred by leaving this question to the jury. In ruling on Officer Bruce's motion for judgment as a matter of law based on qualified immunity, the district court stated that "the record . . . contains evidence sufficient for a jury to conclude that the law prohibiting unreasonable searches—determined by the search's scope, manner, justification, and location—was clearly established at the time of the search, and that the law's application to Defendant's actions was evident." The district court should have analyzed this question as a matter of law without regard to the jury's verdict. *Littrell*, 388 F.3d at 584-85 ("The issue of qualified immunity is a question of law for the court, rather than the jury, to decide: 'It is the province of the jury to determine disputed predicate facts, the question of qualified immunity is one of law for the court.'" (quoting *Peterson v. City of Plymouth*, 60 F.3d 469, 473 n.6 (8th Cir. 1995))).

962-63 (8th Cir. 1995) (holding that a plaintiff stated a valid Fourth Amendment search-and-seizure claim where he alleged that he was subjected to sexual comments about his anatomy and rubbing of his buttocks with a nightstick during strip searches); *see also Bell*, 441 U.S. at 560 (stating that it is unreasonable to conduct a strip search "in an abusive fashion"); *Bonitz v. Fair*, 804 F.2d 164, 172-73 (1st Cir. 1986) (holding body-cavity searches unreasonable where, inter alia, the searching officers wore a single pair of gloves while searching multiple inmates), *overruled on other grounds by Unwin v. Campbell*, 863 F.2d 124, 128 (1st Cir. 1988), *abrogated by Johnson v. Jones*, 515 U.S. 304 (1995) (abrogating *Unwin*).

In this case, the standards for privacy and hygiene clearly were met because only the officers and the arrestee were present for the strip search, the motel room was isolated from public view, the officers were the same sex as Richmond, and Officer Bruce wore a sanitary latex glove. Richmond claims that the search was performed in a degrading, humiliating or abusive manner because he was restrained during the search, he was not allowed to lower his own pants and boxer shorts, and Officer Flesland forcibly bent him over a table for the search. First, while the special verdict form did not ask the jury to make a specific finding as to whether Officer Flesland forcibly bent Richmond over a table, the jury did find specifically that Officer Flesland's conduct during the search was reasonable. This indicates strongly that when the jury rejected Richmond's testimony that the search included a body cavity search, it also rejected his concurrent testimony about Officer Flesland forcibly bending him over a table during the search. Therefore, viewing the evidence in the light most favorable to the verdict, we reject this aspect of Richmond's allegation.

Next, we examine the law as of April 2001 to see if it would have put a reasonable officer on notice that lowering a handcuffed arrestee's pants and boxer shorts for a strip search, while another officer held the arrestee's upper arm, would be held to be degrading, humiliating and abusive. As examples of an unreasonably abusive search, *Bell* cited cases that involved the use of "insultingly suggestive

remarks and banal but terrifying expressions of aggression like those of guards threatening in the time of nakedness to 'put [a] foot up [the] ass' or merely to 'kick the ass' of the humbled prisoner," *United States ex rel. Wolfish v. Levi*, 439 F. Supp. 114, 147 (D.N.Y. 1977), *rev'd on other grounds by Bell,* 441 U.S. at 524, *cited by Bell*, 441 U.S. at 560, and the drawing of blood "by other than medical personnel or in other than a medical environment—for example, if it were [done] by police in the privacy of the stationhouse," because such a search would "invite an unjustified element of personal risk of infection and pain," *Schmerber v. California*, 384 U.S. 757, 771-72 (1966), *cited by Bell*, 441 U.S. at 560.  Strip searches had also been found to be unreasonably degrading, humiliating and abusive where "beatings often accompany these [visual-only body-cavity] searches, and . . . the correctional officers who administer the searches frequently make insulting, abusive, humiliating and intimidating comments and jokes during the course of the searches," *Arruda v. Berman*, 522 F. Supp. 766, 768 (D. Mass. 1981) (internal quotation marks omitted), *cited by Bonitz*, 804 F.2d at 171.  In the instant case, the jury specifically found no use of excessive force, and apart from Richmond's rejected testimony regarding a body cavity search, there were no allegations that the officers attempted to inflict pain or humiliation while conducting the search.  Richmond does not cite any evidence of insulting, intimidating or humiliating comments or jokes by the officers.

Richmond argues that it was unreasonably abusive or degrading to conduct the strip search while he was restrained, and thus unable to lower his own pants and boxer shorts, rather than to transport him to the police station for the strip search.  However, "[t]he Fourth Amendment does not require officers to use the least intrusive or less intrusive means to effectuate a search but instead permits a range of objectively reasonable conduct."  *Shade v. City of Farmington*, 309 F.3d 1054, 1061 (8th Cir. 2002).  In this case, the officers had reasonable suspicion that Richmond was concealing evidence on his person and were in a position to conduct a private, hygienic and non-abusive strip search on the spot, rather than risk Richmond disposing of the evidence during the course of his transportation to the police station.

*See United States v. Barrow*, 287 F.3d 733, 735-36 (8th Cir. 2002) (addressing an issue of proof of possession created where an arrestee with hands cuffed behind his back managed to dispose of a bag of crack cocaine in the back seat of a patrol car). Indeed, the jury in the instant case specifically found exigent circumstances to support even a body cavity search, had one occurred. No clearly established legal standards would have put a reasonable officer on notice that, in these particular circumstances, it was objectively unreasonable to lower the handcuffed arrestee's pants and boxer shorts to accomplish the strip search, rather than to risk loss of evidence by waiting until the arrestee was in an environment where handcuffs were not required. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (noting that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Therefore, Officer Bruce is entitled to qualified immunity.

## III.  CONCLUSION

We conclude that Officer Bruce is entitled to qualified immunity. Accordingly, we do not reach Officer Bruce's arguments regarding the exclusion of certain evidence or Richmond's arguments on the reduction of nominal damages or a new trial on actual damages. We remand to the district court with instructions to vacate the entry of judgment for Richmond and to enter judgment for Officer Bruce consistent with this opinion.

SMITH, Circuit Judge, dissenting.

I disagree with the majority's qualified immunity conclusion and therefore respectfully dissent.

As stated by the majority, our qualified immunity analysis focuses on whether Richmond possessed a clearly established right to be free from a forcible strip search that took place in the field rather than in a controlled environment, such as a jailhouse.

Whether a right is clearly established is a question of law that we review de novo. *Hill v. McKinley*, 311 F.3d 899, 902 (8th Cir. 2002).

A person's right to be free from a strip search conducted in an unreasonable manner is clearly established. *See Bell v. Wolfish*, 441 U.S. 520, 559–60 (1979). However, our inquiry is more precise: Was it clearly established that the forcible strip search of a suspect in the field for investigative purposes was unreasonable? *Cf. Evans v. Stephens*, 407 F.3d 1272, 1283 (11th Cir. 2005) (en banc) ("Seldom does a general standard such as 'to act reasonably' put officers on notice that certain conduct will violate federal law: Fourth Amendment law is intensely fact specific.").

I believe that the right was clearly established. A strip search conducted with the utmost courtesy is nonetheless inherently humiliating and degrading. *Swain v. Spinney*, 117 F.3d 1, 6 (1st Cir. 1997); *Mary Beth G. v. City of Chic.*, 723 F.2d 1263, 1272 (7th Cir. 1983) (recognizing the "magnitude of the invasion of personal rights" that a strip search represents, characterizing it as "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission . . . ." (citation and internal quotations omitted)). Considering the nature of the strip search, courts have held that a constitutional strip search should be conducted in private, *e.g., Young v. City of Little Rock*, 249 F.3d 730, 736 (8th Cir. 2001), and in a hygienic manner, *e.g., Evans*, 407 F.3d at 1277. Although a strip search need not be conducted in the least intrusive manner, it must be conducted in a non-abusive manner. *Evans*, 407 F.3d at 1281 (citing *Bell*, 441 U.S. at 560 (noting that even corrections officers in a jail cannot conduct strip searches of incarcerated inmates in "an abusive fashion")).

The officers subjected Richmond to an unnecessarily invasive and intimidating search. Although the search was conducted in the relative privacy of a motel room by male officers using sterile gloves, no urgency justified forcibly strip searching a handcuffed arrestee. Officer Reynolds testified that no exigent circumstances existed,

-12-

and the record lacks sufficient evidence to support the jury's finding that exigent circumstances were present. Moreover, field strip searches are not common—all three officers testified that they have never strip searched a suspect in the field before or since the search of Richmond—and may excite increased fear and intimidation. *See Evans*, 407 F.3d at 1281 (noting that plaintiffs were searched in "an abnormal place," a broom closet, rather than "a dedicated search cell, medical examination room, or even a bathroom"). Investigative strip searches usually involve an officer's request to the subject of a strip search to remove his or her own clothing. *E.g., Way v. County of Ventura*, 445 F.3d 1157, 1159 (9th Cir. 2006); *Evans*, 407 F.3d at 1276–77; *Swain*, 117 F.3d at 4. Non-consensual and forcible field strip searches of restrained arrestees are not a matter of routine law enforcement investigation incident to arrest. An objectively reasonable police officer should have known that forcible removal of a physically restrained person's clothing, coupled with inspection of his genitalia and buttocks, involves a level of intrusion that requires more justification than the instant facts establish.

I therefore respectfully dissent.

_____